# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON    MAY 1999 SESSION

FILED

July 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| WANDA FAY WILSON BARKER, | ) | OBION CHANCERY (No. 20,207) |
| | ) | |
| Plaintiff/Appellant | ) | |
| | ) | |
| v. | ) | APPEAL NO. 02A01-9808-CH-00222 |
| | ) | |
| JAMES ROYCE BARKER, | ) | |
| | ) | |
| Defendant/Appellee | ) | |

APPEAL FROM THE CHANCERY COURT OF OBION COUNTY
AT UNION CITY, TENNESSEE
THE HONORABLE WILLIAM MICHAEL MALOAN, CHANCELLOR

**For the Appellant:**
Marianna Williams
Ashley, Ashley & Arnold
322 Church Avenue
P. O. Box H
Dyersburg, TN 38025-2008

**For the Appellee:**
Damon E. Campbell
Conley, Campbell, Moss & Smith
317 South Third Street
P. O. Box 427
Union City, TN 38281

**AFFIRMED**                              **WILLIAM H. INMAN, Senior Judge**

**CONCUR:**

**HEWITT P. TOMLIN, JR., SPECIAL JUDGE**

**ALAN E. HIGHERS, JUDGE**

# O P I N I O N

Following thirty-five years of marriage, these parties separated, retired, and divorced. Certain accumulated assets of an agreed value of four million dollars were, by stipulation, divided equally, with each receiving rental properties, promissory notes, certificates of deposit, retirement accounts, and a host of other items of real and personal property, of the aggregated value of two million dollars.

But there were five specific assets, according to the appellant [Wife], which the parties did not divide, and with which this litigation is concerned:

(1)   $75,000.00 in payments from the Bank of Troy, owing on a promissory note;

(2)   $26,000.00 paid from Equitable account;

(3)   $45,000.00 paid from Edward Jones account;

(4)   $17,500.00 - 1996 tax overpayment;

(5)   Cash in home safe.

(1) The Chancellor found that the payments on the Bank of Troy note were made to Husband, who deposited them into his checking accounts. His bank records were extensively discovered by Wife, who argues that during their separation Husband spent more money than she did, including the payments from the Bank of Troy. After much testimony on the point, the Chancellor concluded that these funds were taken into account and consideration in the agreed decision.


(2) Husband received $26,000.00 from the Equitable account in two equal distributions. The first distribution was received before the parties separated.

2

Husband testified that these funds were expended for living costs,[1] but the Chancellor found that only $5,000.00 was properly accounted for, leaving $21,000.00 subject to division.

(3) In February, 1998, after the parties separated, Husband received $45,900.00 from the Edward Jones brokerage. Wife argues that these funds were not included in the marital estate, and were not properly expended by Husband. The Chancellor found, similarly to the Bank of Troy note, that these funds were the subject of discovery and were taken into account and consideration by the parties in their settlement. The evidence revealed that these funds were deposited into Husband's checking accounts, which were analyzed by Wife.

(4) In 1996, the parties overpaid their income tax liability by $17,500.00, which they elected to apply to their 1997 obligation. But in 1997, each filed a separate return, with Husband receiving full credit for the $17,500.00 overpayment. Wife's income tax for 1997 was $4,000.00. For this reason the Chancellor found that Wife was entitled to an equitable division of the $17,500.00 overpayment.

(5) The parties kept a home safe. Wife believed it contained $17,000.00 when the parties separated. Husband testified that he took between $10,000.00 and $12,000.00 and left an unknown amount for Wife. The Chancellor found that Wife had an equitable interest in the safe cash.

---

[1]The parties enjoyed an affluent life style. Each was entrepreneurial, engaged in various business endeavors. Expenditures included the maintenance of two houses and a condominium, swimming pool, numerous trips to Florida, Las Vegas, Biloxi, Hot Springs, and elsewhere.

3

The aggregate of Wife's equitable interest in the safe cash, the tax overpayment, and the Equitable account was determined to be $20,000.00. Wife disagrees, arguing that she was not awarded a fair share because she found no record of deposits for about $120,000.00 received by Husband during their separation, and she presents for review the propriety of the disposition of the five (5) disputed assets.

Our review of the findings of fact made by the trial Court is *de novo* upon the record of the trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26 (Tenn. 1996).

From the extensive evidence offered by the parties, the Chancellor found that the Bank of Troy funds and the brokerage funds, aggregating about $120,000.00, were taken into consideration by the parties during their negotiations and settlement and hence were included in the settlement. The evidence does not preponderate against this finding. From the remaining disputed accounts, the Chancellor awarded the appellant $20,000.00. We cannot find that the evidence preponderates against this amount.

The judgment is affirmed at the costs of the appellant.

_____

CONCUR:                                                      William H. Inman, Senior Judge

_____

Alan E. Highers, Judge

_____

Hewitt P. Tomlin, Jr., Special Judge

4